IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROMAN, INC., an Illinois Corporation, | ) | FILED: AUGUST 11, 2008 |
| | ) | 08CV4529 |
| Plaintiff, | ) | JUDGE LINDBERG |
| | ) | MAGISTRATE JUDGE SCHENKIER |
| v. | ) No. | YM |
| | ) | |
| EUREKA IMPORTING AND DISTRIBUTING LIMITED, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, ROMAN, INC., an Illinois Corporation, through their attorneys, Steven C. Filipowski and Jack L. Haan, of Shaheen, Novoselsky, Staat, Filipowski & Eccleston, P.C., hereby complain of the Defendant, Eureka Importing and Distributing Limited, as follows:

### Background

1.  Plaintiff, Roman, Inc. ("Roman") asserts against Defendant, Eureka Importing and Distributing Limited ("Eureka") a claim for damages arising out of a breach of contract in an amount equal to the sums due and owing to Roman on Eureka's account with Roman.

### Parties

2.  Roman is an Illinois corporation with its principal place of business at Bloomingdale, Illinois and is thus a citizen of the State of Illinois.

3.  Eureka was organized and exists under the laws of Canada and has its principal place of business in Burlington, Ontario, Canada and is thus a citizen of Canada, a foreign state.

**Jurisdiction and Venue**

4. This Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of the State of Illinois and a citizen of Canada.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the cause of action stated herein occurred in this District and pursuant to the terms of a Distribution Agreement dated November 1, 2005 made by and between Roman and Eureka. A true and correct copy of the Distribution Agreement is attached hereto as Exhibit A and is by this reference incorporated herein.

**Facts**

6. At all times relevant hereto, Roman has been a producer and distributor of collectibles, gifts and decorative accessories.

7. Through December 31, 2007, Eureka acted for Roman as its distributor in Canada, pursuant to the terms of a Distribution Agreement dated November 1, 2005. A copy of the Distribution Agreement is attached hereto as Exhibit A. From and after January 1, 2008, Eureka acted on behalf of Roman as Roman's independent commissioned sales representative for Canada, earning a commission on sales at the rate of 25% of actual receipts net of returns.

8. With respect to transactions which have occurred through the end of 2007, and as of July 31, 2008, Eureka owes to Roman the sum of $462,816.28. A summary of the account between Roman and Eureka is set out at Exhibit B, which exhibit is attached hereto and is by this reference incorporated herein.

9. Roman has requested that Eureka pay the sums owed to Roman on Eureka's account and Eureka has refused to pay.

WHEREFORE, Plaintiff, Roman, Inc., demands judgment against Eureka Importing and Distributing Limited, in the amount of $462,816.28, plus costs of suit, with interest at the judgment rate, and any further relief that the Court deems equitable and just.

> Respectfully submitted,
>
> ROMAN, INC., an Illinois Corporation
>
> By:   s/Jack L. Haan
>         One of Its Attorneys

Steven C. Filipowski, #0804045
Jack L. Haan, #06210936
Shaheen, Novoselsky, Staat, Filipowski & Eccleston, P.C.
20 North Wacker Drive - Suite 2900
Chicago, Illinois 60606
(312) 621-4400
(312) 621-0268 (fax)
Attorneys for Plaintiff

# ROMAN, INC. AND
# EUREKA IMPORTING & DISTRIBUTING LIMITED
# DISTRIBUTION AGREEMENT

AGREEMENT, entered into as of November 1, 2005, between Roman, Inc., an Illinois corporation, 880 South Rohlwing Road, Addison, Illinois 60101 ("Roman") and Eureka Importing & Distributing Limited, 3345 North Service Rd., Unit 107, Burlington, ON, Canada L7N 3G2 ("Eureka").

1.    *Roman.* Roman is the sole North American distributor of certain giftware products and wishes to appoint Eureka as the exclusive wholesale distributor of the products listed in Schedule A to this Agreement (collectively, the "Products") Roman reserves to itself the unqualified right to manage its business in all respects, including, but not limited to, the right to maintain or alter the design, manufacture, labeling or packaging of all of its products, including the Products.

2.    *Eureka.* Eureka wishes to act as Roman's exclusive wholesale distributor of the Products in the territory of the Provinces and Territories of Canada (the "Territory). Eureka acknowledges that its strict performance of the obligations of this Agreement is essential to the continuation of the privilege of acting as a wholesale distributor of the Products in the Territory. Eureka represents and warrants that: it has all corporate authority to perform this agreement and that such performance will not violate any agreement to which it is a party.

3.    *Obligations of Roman.*

   a.    *Agreement to Sell.* Roman agrees to sell the Products exclusively to Eureka for wholesale distribution within the Territory during the term of this Agreement. Roman may, from time to time, add items to the list of Products and withdraw items from the list of Products without obligation to Eureka. Any Products which Roman for any reason ceases to sell in the Territory shall automatically be deleted from the list of Products without obligation to Eureka. This Agreement shall be deemed a single agreement governing all of the Products, notwithstanding that various Products may be listed on different versions of Schedule A which may be attached to this Agreement.

   b.    *Catalogues.* Roman will design, develop and produce the catalog/brochure vehicles that support the Products. Eureka can reproduce any of these vehicles by contacting Roman's printer directly. All costs associated with Eureka's printing of Roman's vehicles are to Eureka's account with Roman's catalogue vendor.

   c.    *Samples.* Roman will invite Eureka to Roman's National Sales Meeting at which Eureka's personnel may at Eureka's option participate in sales training programs. Eureka's attendance shall be at Eureka's expense. Eureka will advise Roman of its samples needs for its showrooms. Roman will order all samples and Eureka will pay for the samples in accordance with the Price Terms and Conditions outlined in Section 6.

4.    *Applicable Law.* For purposes of this Agreement, the term "Applicable Law" shall mean only those provisions of applicable law that are incapable of being waived and that

EXHIBIT A

are applicable notwithstanding the parties' choice, in paragraph 19 below, of other law to govern this Agreement.

5. ***Obligations of Eureka.***

    a. *Best Efforts.* Eureka agrees to use its best efforts during the term of this Agreement to sell and actively to promote the sale, in all lawful ways and to the maximum extent possible, of all of the Products to all channels of distribution in the Territory; Eureka will personally contact retail customers within the Territory at reasonable intervals and use its best efforts to sell them the Products in an aggressive, effective and diligent manner.

    b. *Purchase of Products.* Eureka agrees to purchase from Roman such quantities of the Products as are required to maintain a supply of the Products sufficient to meet the demands of its customers. All orders for the Products received by Roman are subject to its acceptance in its reasonable discretion. Roman shall exercise its discretion hereunder with due regard to availability, demand of other distributors and inventory on hand.

6. ***Price, Terms and Conditions of Sale.*** Eureka shall be entitled to place orders for Products in established minimum quantities it chooses either with Roman or with one of Roman's vendors by direct import, at its sole discretion. The prices of the Products, terms and conditions of sale shall be as follows:

    a. *Products Shipped from Roman, Addison, Illinois.* The price shall be an amount equal to Roman's landed cost, plus 37%, plus royalty fees paid by Roman to third parties, where applicable. Applicable royalty fees shall be paid at the rate paid by Roman. The price shall be due as follows: all invoices issued by Roman between November 11 and June 1 shall be payable net sixty (60) days; all invoices issued by Roman between June 2 and November 10 shall be payable on December 10.

    b. Eureka will transmit their customer and stock orders through Roman's Information Systems Department (Eureka@roman.com).

    c. Roman will ship in accordance with Eureka's requested ship dates and Eureka will immediately accept all stock orders it has placed with Roman to the date of this Agreement on account number 7109076 ($23,440.00).

    d. *Direct Import.* In the event that Eureka places Direct Import orders with a vendor, Eureka shall pay to Roman First Cost plus 17%, plus applicable royalty and agents fees. For Direct Import orders, Eureka will provide its own letter of credit and will deal directly with the vendor. Eureka will supply to Roman a copy of all purchase orders issued to vendors.

7. ***General Conditions.***

    a. *Facilities and Sales Force.* Eureka warrants and represents that it has the resources, including equipment, facilities, materials and personnel, necessary to perform this Agreement. Eureka will maintain a properly trained sales force of adequate size to represent and promote the sales of the Products throughout the Territory. In the event that Eureka, in its sole discretion, devotes any advertising, sales and promotion dollars to the sale of its products, it shall

devote no lesser percentage of such advertising, sales and promotion dollars on the advertising, sales and promotion of the Products than the percentage which Eureka's gross profit on sales of the Products is of Eureka's total gross profit. Gross profit shall be calculated by subtracting laid-in cost from gross revenues, with no allocation of any other costs. Eureka shall be responsible for developing its own marketing plan and system for dispensing the Products. Under no circumstances shall the foregoing impose any obligation on Eureka to devote any advertising, sales or promotional dollars to the sale of any of the Products, other than the cost of its sales staff to represent and promote the Products.

b. *Compliance with Laws.* Eureka shall at all times conduct its efforts hereunder in strict accordance with all applicable laws and regulations and with the highest commercial standards.

c. *Direct Imports.* Eureka shall furnish to Roman copies of Eureka's vendor invoices for Eureka's direct imports of the Products.

d. *Area of Sales.* Eureka agrees that it will not sell the Products directly or indirectly to customers located outside the Territory without the written approval of Roman, which Roman may give or withhold in its sole and absolute discretion.

If the provisions of this subparagraph 7d are or shall be prohibited under Applicable Law of any jurisdiction, then such provisions shall not apply in such jurisdiction and, in lieu thereof, Eureka agrees:

(i) to exercise its best efforts to promote, sell and service the Products in the Territory;

(ii) that it shall be primarily responsible for servicing retail accounts in the Territory with the Products; and

(iii) that it shall concentrate its efforts in the Territory.

e. *Deliveries.* Eureka and Roman shall maintain prompt delivery service compatible with good business practice, the nature of the Products, and the requirements of Eureka's customers; such delivery service shall be no less prompt and effective than that of Roman's competitors, in the case of deliveries from Roman to Eureka, and Eureka's competitors, in the case of deliveries from Eureka to Eureka's customers.

f. *Credit Checks* Eureka shall submit, as soon as available from Eureka's auditors, a detailed certified fiscal year-end balance sheet and profit and loss statement and, as requested by Roman, interim financial statements and such other information as Roman deems necessary for credit purposes.

g. *Damaged Products.* Eureka shall store all inventories of Products in proper environmental conditions to maintain the quality of the Products. In the event of damage to any of Products for any reason rendering the contents unfit for their intended use or otherwise unsaleable, Eureka shall promptly notify Roman of the facts and shall not distribute or transfer

such Products to any other person or otherwise dispose of such Products except as instructed in writing by Roman.

   h. *Casualty Insurance.* Eureka shall maintain sufficient insurance to protect it against a diminution of capital in the event of fire, theft or casualty loss.

  8. *Internet Sales.* Notwithstanding any other provision of this Agreement:

   a. Roman reserves the right to sell the Products directly to consumers, but not to retailers, located in the Territory, to the extent lawful, via the Internet or other e-commerce outlets or by any other means.

   b. Eureka may sell and advertise the Products to retailers over the Internet or by other electronic means without further consent of Roman during the term of this Agreement.

  Sales over the Internet or by other electronic means are subject to the following conditions:

    (i) Eureka's development of reasonable standards for its website operation and customer service and;

    (ii) Eureka's implementation of a reasonable method for verifying that customers purchasing the Products are located and are purchasing for delivery within the Territory

  9. *Term.*

   a. The term of this Agreement shall be for an initial term commencing January 1, 2006 and ending December 31, 2007. If the parties mutually agree, this term shall be renewed at expiration for successive renewal terms of twenty-four (24) months (The initial term and any renewal terms shall be referred to as "Contract Terms"). Such mutual agreement must be concluded no later than one year prior to the expiration of the Contract Term to be renewed and must be evidenced by a writing signed by the parties. If no such written renewal is executed, the Agreement shall terminate at the conclusion of such Contract Term without further action by either party. Any Contract Term is subject to earlier termination as provided for elsewhere in this Agreement. Roman and Eureka may choose not to renew this Agreement without cause or for any reason for which it could terminate this Agreement or because the parties are unable to agree upon terms for a renewal.

   b. Upon the expiration or termination of this Agreement for any reason whatsoever, Roman shall have no right to require Eureka to continue to act as a distributor of Products, or of any of them, and Eureka shall have no right to require Roman to continue to supply Products, or any of them, to Eureka. Each party covenants that providing this Agreement either expires as set out in Section 9 a or is terminated in accordance with Section 12, it will not commence any action or proceeding wherein it alleges that it has or had any such rights. Further, each of the parties hereby waives any claim against the other for loss or damage of any kind, (including, without limitation, damages or other compensation for unjust enrichment, loss of prospective profits, reimbursement for expenditures or investments made or commitments

4

entered into or goodwill) because of failure of the parties to extend the term hereof upon expiration of this Agreement or because of failure of the parties, for whatever reason, upon expiration hereof to make a similar agreement relating to distribution of Products in the Territory. Eureka acknowledges and agrees that any amounts which may be spent by Eureka in the performance of this Agreement, including but not limited to the establishment and maintenance of additional or existing sales, management, warehouse, delivery, administrative or other personnel, delivery vehicles or other equipment or facilities, advertising and promotion costs, or for any other purpose, shall be spent and incurred voluntarily by Eureka with the knowledge that this Agreement may be terminated as provided in this Agreement, and thus Eureka shall make no claim against Roman and Roman shall not be liable with respect to any investment or expenditures incurred by Eureka in anticipation of the continuance of this Agreement. The provisions of this subparagraph 9b shall survive the termination or expiration of this Agreement.

10. *No Assignment.* Eureka may not assign this Agreement or any of its rights or obligations hereunder, without the prior consent of Roman, which shall not be unreasonably withheld. Any merger, reorganization, consolidation or change in the control of Eureka shall be deemed an assignment.

11. *No Fee Paid.* Eureka acknowledges that it has not and will not pay any fee to Roman in connection with this Agreement or any prior agreement, understanding or arrangement between them.

12. *Termination.*

   a. Unless Roman promptly after discovery of the relevant facts notifies Eureka to the contrary in writing, this Agreement will terminate immediately without notice upon the institution of insolvency, bankruptcy or similar proceedings by or against Eureka, any assignment or attempted assignment by Eureka for the benefit of creditors, or any appointment, or application for such appointment, of a receiver for Eureka. Roman may terminate this agreement upon thirty (30) days prior written notice if it reasonably apprehends any of the foregoing events occurring.

   b. Either party may terminate this Agreement without cause, upon one year's written notice or such longer notice as may be required by Applicable Law to the other party during the initial term or during any renewal term of this Agreement. If such termination without cause conflicts with Applicable Law, or if either party so elects, either party may terminate this Agreement:

   (i) Upon thirty (30) days prior written notice, or such longer notice as may be required by Applicable Law, by the party electing to terminate (the "Terminating Party") given to the other party (the "Defaulting Party") at any time after the occurrence of any of the following events; provided, however, that the Defaulting Party shall have fifteen (15) days from the date of such notice to cure any such default:

   (A) the Defaulting Party's breach of, or failure to comply with, any material term or provision of this Agreement other than provisions relating to performance standards;

5

     (B) the Defaulting Party's failure to pay the Terminating Party any sums due pursuant to the terms of this Agreement; or

     (C) the Defaulting Party becoming insolvent or unable to pay its debts as they come due in the usual course of business; or

  (ii) Immediately upon written notice by the Terminating Party to the Defaulting Party given at any time after the occurrence of any of the following events:

     (A) the Defaulting Party's repeated breach of, or failure to comply with, any term or provision of this Agreement other than provisions relating to performance standards, within a twelve month period;

     (B) the conviction of the Defaulting Party, or any officer, director, substantial shareholder or principal of the Defaulting Party, in a court of competent jurisdiction of any offense substantially related to the business conducted by the Defaulting Party in connection with this Agreement or of any offense punishable by a term of imprisonment;

     (C) the Defaulting Party's failure to comply with any applicable law or regulation or the Defaulting Party's engaging in any practice with respect to the Products, which is determined to be an illegal or unfair trade practice in violation of any applicable law or regulation, or which in the reasonable opinion of qualified counsel to the Terminating Party is an illegal or unfair trade practice in violation of any law or regulation;

     (D) a lien is voluntarily granted other than in the ordinary course of business by the Defaulting Party on the Defaulting Party's inventory or there is an involuntary lien or levy against, or foreclosure or seizure of, any of the Defaulting Party's assets, including, without limitation, inventory, by a creditor, lienholder, lessor, government authority or other person, which has not been removed within ten (10) days;

     (E) the Defaulting Party's falsification of any records or reports required hereunder;

     (F) the Defaulting Party's failure to act in good faith and in a commercially reasonable manner in connection with its obligations under this Agreement; or

     (G) the Defaulting Party's loss through failure to renew or because of suspension, cancellation or revocation for a period of fifteen (15) days or more, of any license or permit required by law and necessary in carrying out the provisions of this Agreement and in maintaining its corporate status;

c. Roman may terminate this Agreement immediately upon written notice to Eureka given, except as otherwise provided, at any time after the occurrence of any of the following events:

(i) Eureka's voluntary abandonment of the distributorship to which it has been appointed hereunder;

(ii) the sale, distribution or any other disposition of substantially all of Eureka's assets;

(iii) a change in Eureka's active management occurs, which change, in the reasonable opinion of Roman, will have a material effect on Eureka's ability to distribute and promote the Products. Such a change includes, but is not limited to, the death or incapacity for a period of thirty (30) days of a principal officer, partner or manager of Eureka. Eureka and Roman agree that this Agreement is in the nature of a personal service agreement and its continuation is conditioned upon Eureka being managed and owned in the same manner as prior to the commencement of the term hereof Eureka shall give written notice of any contemplated change in management or ownership to Roman at least thirty (30) days prior to the effective date of such contemplated change; or

(iv) Eureka's breach of any warranty or representation made in this Agreement. Eureka and Roman each agree that the provisions of this Paragraph 12 are essential, fair and reasonable and that the occurrence of any of the events described in the subparagraphs of this Paragraph 12 shall constitute good, just and sufficient cause within the meaning of any Applicable Law requiring such cause for the termination or nonrenewal of this Agreement. Upon any termination of this Agreement in accordance with this Paragraph 12 Roman shall have the option, but not the obligation, to repurchase any remaining inventory of Eureka at the price paid to Roman for such inventory by Eureka. Upon any termination of this Agreement in accordance with this Paragraph 12, neither party shall have any further rights or obligations in respect of each other except that any such termination shall be without prejudice to the rights and obligations of the parties in respect of Products sold or delivered to Eureka prior to termination.

13. *Confidentiality.*

a. All business information and all materials containing business information provided by either party to the other including, but not limited to, lists of present or prospective customers or vendors or of persons that have or shall have dealt with either party or purchased Products through either party or otherwise, customer requirements, preferences and methods of operation, management information reports and other computer-generated reports, pricing policies and details, details of contracts, operational methods, plans or strategies, business acquisition plans, new personnel acquisition plans and other business affairs of either party and any of its respective affiliates (the "Confidential Information") learned by either party heretofore or hereafter, are and shall be treated as confidential. Each party (the "Receiving Party") who receives Confidential Information of the other party (the "Disclosing Party") agrees for itself and on behalf of its respective directors, officers, employees and agents to whom Confidential Information is disclosed, that it and they shall keep such Confidential Information confidential

and retain them in strictest confidence both during and after the term of this Agreement. Confidential Information shall not be disclosed by the Receiving Party to any person except to officers and employees of the Receiving Party requiring such Confidential Information to perform services pursuant to this Agreement, and shall not be used for the benefit of the Receiving Party or any third party except in connection with services rendered pursuant to this Agreement. The Receiving Party acknowledges and agrees that such unauthorized disclosure or other breach of this provision will cause irreparable injury to the Disclosing Party and that money damages alone will not provide an adequate remedy to the Disclosing Party. Accordingly, in addition to any other rights or remedies which may be available to the Disclosing Party, the Disclosing Party shall be entitled to appropriate injunctive relief or specific performance against the Receiving Party or the Receiving Party's directors, officers, employees and agents to prevent unauthorized disclosure of such Confidential Information or other breach of this provision. The Disclosing Party shall be entitled to recover from the Receiving Party its costs, expenses and attorneys' fees incurred in enforcing its rights under this Paragraph 13. The Receiving Party shall return to the Disclosing Party all such Confidential Information and all embodiments thereof (whether on paper, magnetic or optical media, or otherwise) immediately upon the termination of this Agreement, or as otherwise directed by the Disclosing Party.

      b.    These obligations of confidentiality shall not apply to any information which: (i) was known to the Receiving Party at the time of receipt; (ii) was in the public domain at the time of receipt; (iii) becomes public through no fault of the Receiving Party; (iv) the Receiving Party legitimately learns from third parties who are under no obligation of confidentiality with respect to the Confidential Information; or (v) is required by applicable law to be divulged.

      c.    The provisions of this Paragraph 13 shall survive the termination, expiration or assignment of this Agreement, and shall be deemed a separate and independent agreement in consideration of, and fully vested upon, either party making available to the other party Confidential Information that is the subject of these provisions.

    14.    ***Intellectual Property Rights.*** All intellectual property rights relating to the Products and to this Agreement, including all trademarks, copyrights, patents, mask works, trade secrets and other intellectual property rights (together, the "Intellectual Property"), are and shall remain the property of Roman. Eureka shall comply with all instructions of Roman relating to the use of the Intellectual Property and shall obtain Roman's prior approval of any such use. Eureka shall not use or register any Internet domain name containing any Roman trademark, trade name or brand, and shall submit to Roman for approval in advance true and complete copies of all World Wide Web pages which contain or refer to any Roman intellectual property, and shall not use such intellectual property on its website without such approval. Eureka shall include on its website such links to Roman's website or such other sites as Roman may specify, but subject to Roman being able to demonstrate that such links will not enable Roman to obtain any of Eureka's proprietary information. Eureka shall promptly inform Roman of any action or conduct of any person which may infringe upon any of Roman's intellectual property rights. Roman shall have the sole discretion whether to take legal action against any such infringement and any damages or other monies recovered on account of such infringement, whether by judgment, settlement or otherwise, shall belong exclusively to Roman. Eureka shall cooperate fully with Roman in connection with any legal action taken by Roman in connection with any such infringement. Roman shall reimburse any reasonable out-of-pocket expenses incurred by

Eureka in connection with such cooperation. Upon the termination or expiration of this Agreement, Eureka shall immediately discontinue all use of all such intellectual property rights. Eureka agrees that any intellectual property it may develop in the course of its performance of this Agreement or which relate in any manner to the Products shall be the property of Roman. Eureka hereby assigns all such trademarks, copyrights, patents, mask works, trade secrets and other intellectual property rights to Roman and agrees, upon request, to execute any formal assignments or other documents as Roman may request to effectuate such assignment.

15. *Indemnification.*

a. Roman shall indemnify and save harmless Eureka from and against all losses, claims, damages or other costs of any nature or kind whatsoever arising directly or indirectly out of: (i) the breach of any warranty, representation or agreement made by Roman to Eureka in this Agreement; (ii) Eureka's use of the Intellectual Property in the Territory; (iii) the negligence or intentional misconduct of Roman, its officers, employees, agents or contractors; or (iv) relating to the quality or condition of or inherent defect in the Products at the time of delivery to Eureka, including, but not limited to, any imperfection, substandard quality, contamination, packaging, processing or other condition relating to the Products. Such indemnity shall include, but not be limited to, reasonable expenses, attorneys' fees, court costs and other expenses of investigation, litigation and settlement of any such claim.

b. Eureka shall indemnify and save harmless Roman from and against all losses, claims, damages or other costs of any nature or kind whatsoever arising directly or indirectly out of: (i) the breach of any warranty, representation or agreement made by Eureka to Roman in this Agreement; (ii) the negligence or intentional misconduct of Eureka, its officers, employees, agents or contractors; or (iii) relating to any quality or condition of or inherent defect introduced into the Products after the time of delivery to Eureka, including, but not limited to, any imperfection, substandard quality, contamination, packaging, processing or other condition relating to the Products. Such indemnity shall include, but not be limited to, reasonable expenses, attorneys' fees, court costs and other expenses of investigation, litigation and settlement of any such claim.

16. *Products Liability Insurance.* During the term of this Agreement and for five years thereafter, each party shall maintain in full force and effect commercial general liability insurance with product liability coverage respecting the sale of the Products in an amount of not less than two million dollars ($2,000,000) in the aggregate and two million dollars ($2,000,000) per occurrence. Such insurance maintained by each party shall contain a broad form vendor's endorsement inuring to the benefit of the other party and naming the other party as additional insured. Each party shall furnish to the other annually a certificate confirming such coverage. If either party does not obtain such insurance and furnish the other with such a certificate, the other party may purchase such insurance itself and, upon presentation of appropriate documentation to the first party, such first party shall reimburse the other party for the cost thereof.

17. *Force Majeure.* The performance of each party's obligations under this Agreement is subject to all contingencies beyond the control of such party or its suppliers, including but not limited to *force majeure,* strikes, lockouts, labor disputes, floods, fires, war, hurricane, typhoon, other extreme weather, earthquake, lightning, explosion, riots, disturbance, civil commotion, epidemics, embargoes, quotas, shortage of inventory due to crop failure,

shortage of labor, delays in transportation, or government action, including but not limited to price controls, currency controls or detention of goods by authorities, and the parties accordingly are to be relieved of any obligation to each other for damages which may result from such contingencies; provided, however, that the parties shall perform their obligations to the maximum extent and as soon as possible.

18. *Mutual Release.* The parties acknowledge that, at the date hereof, neither of them has any claim for damages, reimbursement of expenses, breach of contract, nor any claim of any other nature against the other party (except for merchandise purchased by Eureka from Roman and not yet paid for) and in consideration of the other entering into this Agreement, any and all such claims of each party, known and unknown, except those stated are hereby fully and forever discharged and released.

19. *No Waiver.* The failure of either party to enforce at any time any of the provisions hereof shall not be construed to be a waiver of such provision, of any other provision or of the right of such party thereafter to enforce any such provision or other provision.

20. *Choice of Law.* This Agreement and the rights and obligations of the parties shall be governed and construed in accordance with the laws of the State of Illinois, applicable to agreements made and to be performed entirely within such State.

21. *Choice of Forum.* The parties agree that neither shall commence any litigation against the other arising out of this Agreement or the termination thereof except in a court located in the State of Illinois. Each party consents to jurisdiction over it by and exclusive venue in such a court.

22. *Arbitration.* Except as provided elsewhere in this Agreement, and except for claims for payment for Products sold and delivered, all disputes arising out of or relating to this Agreement, including the termination thereof, the parties' relationship, or the rights and obligations of the parties, shall be resolved by arbitration in the City of Chicago, State of Illinois, under the JAMS Comprehensive Arbitration Rules and Procedures. The arbitrators shall be empowered to award actual money damages, but shall not be empowered to award punitive, exemplary or consequential damages, specific performance, injunctive relief or other equitable relief, except as expressly authorized by this Agreement. Issues determined by arbitration pursuant to this provision or similar provisions in other agreements to which Roman is a party shall not be given preclusive or collateral estoppel effect in subsequent arbitration proceedings pursuant to this provision or similar provisions in such other agreements. The parties further agree that neither shall commence any litigation against the other arising out of this Agreement or the termination thereof as to any matter not subject to arbitration or with respect to any arbitration proceeding or award, except in a court located in the State of Illinois. Each party consents to jurisdiction over it by and exclusive venue in such a court.

23. *No Agency or Fiduciary Relationship.* Nothing in this Agreement shall be deemed to constitute Eureka an agent of Roman or to establish a fiduciary relationship of any kind between the parties. Eureka shall have no authority to bind or to act on behalf of Roman.

24. *Notices.* Any notice or other communication required or which may be given pursuant to this Agreement shall be in writing and shall be delivered personally, faxed, e-mailed,

sent by recognized courier with proof of delivery or sent by certified, registered, or express mail, postage prepaid, to the relevant address set forth in the preamble to this Agreement, or, in the case of fax or e-mail, to the fax number or e-mail address provided by each party to the other. Any such notice or communication shall be deemed given when so delivered personally or by courier, on the date transmitted when so delivered by fax or e-mail or if mailed, on the earlier of the date of receipt or two days after the date of mailing.

25.  *Entire Agreement.* This Agreement contains the entire understanding of the parties and supersedes and merges all prior and contemporaneous agreements and discussions between the parties. Any and all representations or agreements by any agent or representative of either party not contained in this Agreement shall be null, void and of no effect. This Agreement may not be changed in any way, except by an instrument in writing, signed by both parties; only Roman's President and Executive Vice President-Sales are authorized to sign any such instrument on behalf of Roman.

26.  *Blue-Pencil Clause.* If for any reason any provision of this Agreement, including but not limited to, any provision relating to termination of this Agreement, shall be deemed by a court of competent jurisdiction to be legally invalid or unenforceable in any jurisdiction to which it applies, the validity of the remainder of the Agreement shall not be affected and such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law, and, in its modified form, such provision shall then be enforceable and enforced.

27.  *Captions.* The captions of this Agreement are for convenience and reference only and in no way define, limit or describe the scope or intent of this Agreement nor affect it in any way.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, the day and year above written.

ROMAN, INC.

By: _____
Its President

EUREKA IMPORTING & DISTRIBUTING LIMITED

By: _____
Its President

Eureka's Commissions
Jan-Jul 2008

| Eureka's Commission Earned From Invoices Paid | AT 25% Rate |
|---|---|
| Feb/08 | (368.05) |
| Mar/08 | (3,161.97) |
| Apr/08 | (1,757.94) |
| May/08 | (7,038.75) |
| June/08 | (14,168.17) |
| July/08 | (10,810.06) |
| Total Commission Earned 7/31/08 | (37,304.94) |
| | |
| Commission Advances @ 06/30/08 | 180,000.00 |
| Total Due Roman from Advances | 142,695.06 |
| | |
| Actual Eureka's Account Receivable Balances Due Roman Inc | |
| 2008 Account CN# 7231418 | 241,569.41 |
| 2007 Account CN# 7196255 | 71,381.73 |
| Sample Account CN# 7232940 | 7,170.08 |
| **Amount Due to Roman Inc as of 7/31/08** | **462,816.28** |

Note: All Amounts are in Canadian Dollars

08CV4529
JUDGE LINDBERG
MAGISTRATE JUDGE SCHENKIER
YM

EXHIBIT B